Good morning, Your Honors. May I please the Court? My name is Carlos Cruz, and along with my co-counsel, Nora Gutierrez, we represent the petitioner, Mr. Siua. Your Honors, the Board of Immigration Appeals' conclusion that the petitioner gave false testimony for the purpose of obtaining an immigration benefit is not supported by substantial evidence based on the following three reasons. First, the Board failed to engage in any factual analysis regarding the petitioner's intent in providing that false testimony. Second, the immigration judge was in the best position to determine petitioner's credibility regarding his intent. And lastly, the record is riddled with confusing and incomplete testimony that does not provide a substantial basis for supporting the BIA's decision. First, Your Honor, whether the applicant has subjective intent to deceive and provide false information in order to obtain immigration benefit is a question of fact. Unless the petitioner has that subjective intent, the for purposes of cancellation of removal. This Court and others have found that whether misrepresentations are made for reasons other than an intent to deceive, but for shame, faulty memory, misinterpretation of a question, or innocent mistake, that those reasons do not preclude a finding of good moral character within the context of cancellation of removal. In this particular case, the Board's decision is in error, and it's in error for two reasons. One, the factual basis the Board provides in this decision is incorrect. First, the Board does say that petitioner provided false information regarding his arrest, and in fact he had been arrested one time. And this is true. Initially, petitioner provided that he had been arrested one time for driving under the influence of alcohol. However, before a rap sheet was ever provided, before a recess was ever taken, petitioner, on his fourth answer, did provide that he had a second arrest, which had taken place a year prior in 2009. And I thought, or at least the BIA thought, that that occurred after it was clear that they were going to go get a rap sheet. No, Your Honor. That happened when the immigration judge and petitioner's counsel had a very brief two-question exchange about a Hawaii background check that had not been requested and provided by petitioner's counsel. At that point, government counsel had not even disclosed that she had an old, expired two-year-old rap sheet that contradicted the petitioner's testimony regarding his arrest. But more importantly, Your Honor, the Board's decision is in error because the statement of law provided in the decision is incomplete and is inaccurate. The Board provides that the petitioner's false testimony is not a totality of the circumstances factor, but rather an absolute disqualifier to demonstrating good moral character. And that is true as long as the false information was provided with the subjective intent to receive and obtain an immigration benefit. In this case, the immigration judge, as noted by the Board, did provide that the judge gave petitioner deference to his testimony and did not find that he had provided false information with that intent to deceive because he was ashamed. And that's the one reason cited by the Board. But the Board, in addressing that point, fails to analyze why that would be insufficient. Is there an issue here? I mean, you haven't really pointed to it, but there is a relative, a differential fact-finding role for the I.J. and the Board, right? The Board is supposed to, is not supposed to overturn the I.J.'s fact-findings except for what? Clear error? Yes, Your Honor. Does that have anything to do with your argument or not? I believe it does, Your Honor, to the extent that substantial evidence must be based on the record. And in this case, the record contains testimony from the petitioner that the immigration judge used in reaching her conclusion regarding his credibility about his intent in providing that false information. And so therefore, the Court, although this Court is going to look at the Board's decision in deciding substantial evidence, the evidence is based on what was provided. We can't also consider whether the Board applied the right standard in reviewing the I.J.'s decision? Yes, Your Honor. I believe the Court would be in a position to make that determination, particularly with regards to credibility. The judge in this case goes at length in providing reasons for why the judge believed the petitioner had not given false testimony with the intent of deceit. One problem here is exactly what was the I.J. finding? I beg your pardon, Your Honor? Where, where, another thing, the Board, I gather, read the I.J. as not really having made that finding. Did he make that finding? The immigration judge made a credibility finding, yes, Your Honor. Well, he said somewhere or other, I find him credible, but not particularly, but with regards to this problem. The judge did address this issue, Your Honor, and the Court provides numerous reasons for why she was not going to find that he had provided that information for the purpose of obtaining an immigration benefit. For example, she noted his demeanor as part of her reasons. She noted that he had a very heavy tongue and accent, that he had very limited fluency in English, that he was ashamed and confused, that he thought that the initial 1992 conviction had been dismissed, also that he tried to forget about his prior conduct, that the focus was his family and community, and the judge went further on to say that she had also relied on letters provided by the pastor and the president of his church, and, quote, she had also focused on other factors that she would not have considered in other cases, such as that he was the president of the Tongan church, that he had been a member since 1991, that he was self-employed, that he was a homeowner, that he had adopted his sister as our daughter, that he provided aid to his family back in Tonga. What does any of that have to do with whether or not he was seeking benefits? Your Honor, it's relevant. What about the character, then? It goes to the issue of his character. It goes to the issue of whether or not this is the type of individual that would provide false information for the purpose of obtaining an immigration benefit. The Court relies heavily on his demeanor, on his limited language skills, relies heavily on his background, on his record, in assessing and making that credibility finding about what was the reason for the false information provided by the petitioner. In this case, the Court made very clear that she found that it was not for the purpose of obtaining that benefit, but rather... I mean, that's the problem. Where in the I.J. opinion did she actually say that? What she said was, he can barely overcome the threshold to show good moral character, but where did she say, or he say, I'm not sure which, that he was finding that it wasn't for the purpose of obtaining a benefit? Your Honor, her decision doesn't use that language. Her decision uses the language of credibility. Her decision relies on... The only credibility sentence I saw was at the very beginning of the opinion. Is it anywhere else? With regards to credibility, no, that was at page 34 of the record. But with regards to the finding, Your Honor, the judge cites two reasons that this Court has provided as sufficient to excuse false testimony in this context. So when the Court talks about a limited fluency in English, the Court is referring to the Ozora v. INS case that this Court decided in 1996. When it talks about the very heavy Tongan accent, this Court, the immigration judge was referring to other cases where this Court has found that there may be other reasons for inconsistencies and inaccuracies in the testimony. When the immigration judge talks about the person being ashamed and confused, those are other reasons provided in other cases by the Supreme Court where the Court found that those may be reasons to excuse false testimony in this particular context. And so although the Court doesn't provide the term subjective intent for another purpose, clearly these reasons cited, the wording used by the immigration judge is making clear reference to these decisions issued by this Court in other cases involving false testimony where the issue becomes whether the petitioner had the intent to deceive or not. And for those reasons, Your Honor, this Court should reverse the Borsch decision for lack of substantial evidence, and I would like to reserve two minutes for rebuttal. Thank you very much. Thank you, Your Honor. Good morning, Your Honors. I am Blair O'Connor on behalf of the Attorney General. Your Honors, the core question in this case which came out during the petitioner's opening argument is that whether the IJ made an explicit finding as to what the purpose for the alien's false testimony was, and she did not. And that's what the Board was getting at when it said that this disqualifier, 101F6, providing false testimony for the purposes of obtaining immigration benefits, is not a totality of the circumstances test. It's an absolute disqualifier. Either the alien provided false testimony to try to obtain an immigration benefit, or he did not. The immigration judge's decision... Did she just say, in general, that she found them credible? She did, Your Honor. But her decision reads as if she's actually making a catch-all determination that not providing... Notwithstanding the fact that I admit he knew about his convictions and he provides false testimony about it, he's got these letters from his pastor, he's got other good... Yes, that's true. But he doesn't speak English well, he might not have understood the question, he was ashamed, he was confused, all of that goes to whether he was doing this willfully and knowingly or not. Yes, Your Honor. With respect to being ashamed, we would actually point out, at no point did the alien himself ever say that shame or embarrassment was a reason for why he didn't disclose his three separate... No, he didn't. Right? I mean, the BIA did not find clear error here, did it? It did not, Your Honor. And, I mean, again, there's no dispute that the IJ found that he knew about the convictions and provided false testimony. Her promise, her decision never really addresses what the purpose for that was. I mean, she notes that he was confused, that he thought that maybe once he served his sentences, the convictions had been dismissed, but that is completely unsupported by the record. Okay, but now we're back to the same place, that isn't what the BIA says. Yes, Your Honor, because the only... the reason the BIA... the BIA does find that he provided the testimony for purposes of obtaining a benefit. That sentence isn't in its statement. Because that is really the only reason that's left. I mean, the only reason the alien gives for not disclosing the convictions is that he served the sentence, he was done, and he can forget about them. That's all the record says. It's the only reason the alien gives. We would submit that's a completely implausible reason. I mean, records... convictions are not dismissed simply because you've served your sentence and you want to forget about them. I suppose we thought everything you're saying, you know, could have been... is okay if the BIA had said, this is why we find there was clear error, but they didn't seem to be reviewing for clear error, and I gather we can enforce that rule, right? Well, they do... the second paragraph does note that they review questions of fact for under the clearly erroneous standard. And yes, the decision could have been more fulsome, Your Honor, but when they have a sentence that says, this record shows that the alien provided the false testimony for purposes of obtaining a benefit, i.e. cancellation relief. That's the reason he doesn't disclose the convictions. I mean, criminal convictions are very pertinent to cancellation applications because certain convictions are automatic disqualifiers. And even if they're not an automatic disqualifier, they weigh in the determination of whether or not the alien is deserving of relief and the exercise of discretion. Here in his application, he denied ever having been arrested, convicted, fined, or imprisoned for any offense and specifically any driving incident relating to alcohol. Completely denied it. In immigration court, he swore to the truthfulness of the application's content. Did the BIA rely on the application? It did not, Your Honor. Okay. Have you had any police trouble since you arrived in the United States in 1991? The positioner only mentioned a single DUI conviction from 10 years ago. He was asked, do you have any other convictions beside that one? He unapprovedly testified, no. That's the only one. On cross-examination, he reaffirmed that. Do you have any other convictions than the single DUI conviction from 10 years ago? No. And we would say that a counsel was wrong. It was only then when the IJ asked for an updated rap sheet that he admits to the second, to one of the two other convictions, which occurred, by the way, only five months before his testimony from 2009. He admits to that one. It wasn't until we have much more back and forth in a recess for the DHS counsel to attain the most recent rap sheet that he finally confesses and owns up to the third conviction from 1992. I mean, the alien knows that criminal convictions are relevant, they're important. He has to know at this point, the only possible reason he can have for not disclosing them is because he wants cancellation relief, and other decisions support that. If he had one DUI conviction, would that make any difference, two or three, how would that affect his eligibility for benefits? It could very well affect the issue of whether or not he deserves any exercise of discretion. I mean, DHS considers a DUI a significant misdemeanor, and having three of them could very well play into whether or not he's deserving of that relief and the exercise of discretion. And we would point to the Fourth Circuit's decision in Jean, which involved very similar facts. An alien did not own up to her criminal history. She listed none on the application. She reaffirmed that, and the court there upheld the IJ's determination that the only reason an alien can have for not disclosing a criminal record on a cancellation application is that she doesn't want the facts to come to the adjudicator's attention. And that is for the purpose of obtaining relief. Judge Gould, if I could interject a question. Yes, Your Honor. On a procedure, assuming for sake of argument, that we agree with your friend on the other side of the case, that substantial evidence doesn't support what the BIA did, and that we want to grant the petition and remand, what happens then? Is the remand on an open record, or is it on the record that the BIA currently has? Could the BIA send it back to the ALJ to make a specific decision about what was the purpose of lying? Or is that something that would not happen if we didn't instruct to do that? Yes, Your Honor. We would say that would be up to the board. As we note in our brief, the board didn't rely on the fact that the alien also swore to the truthfulness of the application's contents in immigration court, did not rely on that specific instance as another example of false testimony. So the board could rely on that, and as you note, point, they also could, if they find that the IJ didn't do a good enough job of explicitly stating what the purpose was for giving the false testimony, because if there was an agreement, there was false testimony, then it could remand back to the IJ to make specific findings regarding that. But we would argue that that is not necessary in this case, because the case law supports the board's finding that the purpose here was to obtain immigration benefits. This quote in Toretto's Erister, I may pronounce it, mispronounce it, Erister's Toscanozo found that simply because an alien, you know, it said, it is a fair inference that a person who gives an unequivocally negative answer until he realizes that the interrogator possesses facts that contradicts his explanation is not merely ashamed of the fact denied, but is given a negative answer in part for the purpose of deceiving the tribunal.  Yes, Your Honor. It seems, was the BIA, the BIA said, the respondent further testified that he was only convicted once, after a recess review of the rap sheet, it was revealed that he had two convictions. That's inaccurate, right, as to what happened at the hearing, i.e., he did say before the rap sheet ever surfaced, or before it even surfaced that there was going to be a rap sheet, that he had two convictions. Well, actually, the IJ inquired about an updated rap sheet, and that's when he owns up to the second conviction. No, it was actually before that. What's that? I just looked at it. It was before that, too. It was when there was some inquiry about getting the state of Hawaii something or other. I have a record at 208, on cross-examination, right when it starts, the DH counsel asks the alien if he has any convictions other than the single DUI conviction from 10 years ago, and he replies that was his only conviction. This is, I'm sorry, at 216, I'm sorry, Your Honor. The IJ then inquires about if either counsel has a recent rap sheet, and the DH counsel then asks if he has any other arrests, and only then does he mention a second arrest from 2009. So, it's only after the IJ expressed an interest in getting an updated rap sheet, only then does he admit to the second. It still remains that the BIA is inaccurate. Well, I don't, it says the respondent testified he was convicted once for DUI 10 years ago, oh, after a recess, well, true, Your Honor, that may be incorrect in that he didn't confess to the third one until after they got the recess and obtained the most recent rap sheet. So to that extent, but we would say that's harmless error. I mean, he unequivocally only says he has one DUI conviction from 10 years ago, both on direct and cross-examination, it's unequivocal. And the IJ inquires about an updated rap sheet, he then owns up to the second one, which only is from five months ago, from 2009, it's implausible he would forget about that one. It's implausible he would remember one from 10 years ago, but forget that five months ago he had a second DUI conviction. So he owns up to that when the IJ says, hey, I want a current rap sheet. He only owns up to the third one from 1992 when they take a recess for the DHS counsel to go and get the most recent rap sheet. So he only owns up to this because he knows his interrogator has the information to show that he's got three DUI convictions. The only plausible reason for that, Your Honor, is I want cancellation relief. And if I am true and accurate about it, I'm probably not going to get it. And so we would say that because it's a substantial evidence standard, this record fails to compel, fails to support, let alone compel, that there is any other reason for providing false testimony other than to obtain cancellation relief. Okay. Thank you very much. Thank you very much, Your Honors. Your Honors, remand would be most appropriate in this case. I'd like to cite to the record with regards to the taking of the oath regarding the contents of the application. When the immigration judge in this case asked the petitioner and his wife about the contents of the application, the record does not provide that the petitioner replied in the affirmative. The transfer provides that the answer was indiscernible. In fact, the transfer provides that only... As to what? I'm sorry. As with regards to taking the oath to the contents of the application, Your Honor, something that I believe government counsel... But that's not, I mean, that's not here now anyway because they specifically didn't rely on it. That is true, Your Honor. But simply it goes to show the inaccuracy of the record with regards to this particular point among others that are also inaccurate in the record. As you know, the board's decision is in error with regards to the way in which petitioner disclosed this arrest. And with regards to the DUIs, whether the petitioner had one DUI or three DUIs, these crimes are not crimes involving moral turpitude. So these crimes per se will not have disqualified the petitioner from receiving cancellation of removal. Although, these crimes do go to the issue of discretion. There were many other multiple favorable factors in favor of the petitioner in this case that would've outweighed any adverse finding on the part of the immigration judge with regards to credibility. Moreover, although the petitioner doesn't use the word shame in his testimony, he does provide other information beyond the fact that he was confused about his 1992 conviction. The record provides numerous places that he tries to forget about his mistakes, that his state of mind is to look forward to his future family and community, that he had confessed to his pastor about what he had done. And this is found at page 248 in the record, in addition to the reference about his confusion regarding the dismissal of the 1992 conviction. And lastly, with regards to the absolute disqualifier, it is true that if the petitioner gave false testimony for the purpose of obtaining an immigration benefit, that is a complete disqualifier and we would concede that. However, this record does not show that the board based its decision on that finding. And for those reasons, we would ask this court to remand this case back to the BIA. Thank you, your honors. Okay, thank you very much. Thanks, both of you, for a particularly well argued immigration case. Thank you, your honor. It was a useful argument. Sua v. Lynch is submitted and we will go to Armstead v. Fields. Judge Prezan? Yes, we're going to take a break.
judges: Gould, Berzon, Steeh